**UNITED STATES of America**

v.

**Amadio PETITO, Defendant.**

**NO. CR–81–00150.**

United States District Court,
E. D. New York.

Aug. 7, 1981.

Edward R. Korman, U. S. Atty., E. D. N. Y., Thomas P. Puccio, Organized Crime Strike Force, Brooklyn, N. Y. by Laura Bravetti, Sp. Atty., Brooklyn, N. Y., for the U. S.

J. Jeffrey Weisenfeld, New York City, for defendant.

## MEMORANDUM OF DECISION AND ORDER

COSTANTINO, District Judge.

The defendant, Amadio Petito, was charged in a two-count indictment with perjury, in violation of 18 U.S.C. § 1623, and criminal contempt, in violation of 18 U.S.C. § 401. He moved to dismiss the contempt charge prior to trial. The court denied the motion orally and now submits this memorandum fully setting forth its reasoning.

**FACTS**

In July, 1980, Petito was called to testify before a grand jury investigating possible racketeering and tax violations against officials of Local 29 of the Blasters, Drillrunners, and Miners Union.[1] Petito refused to answer certain questions posed by the Government by invoking his fifth amendment right against self-incrimination. After being given immunity pursuant to 18 U.S.C. §§ 6002–3, he continued to refuse to answer these questions and was cited for contempt and incarcerated. After spending twenty days in jail, Petito agreed to testify before the grand jury. It was during this testimony that he allegedly committed perjury. He was subsequently indicted for perjury and criminal contempt.[2]

Petito moved prior to trial to dismiss the contempt charge on the ground that once a defendant has been cited for civil contempt, he subsequently cannot be indicted for criminal contempt unless he is warned at his civil contempt proceeding that he may also be prosecuted criminally. In the case at bar, it is undisputed that Petito was not advised of the possibility that he could be indicted for criminal contempt after being cited for civil contempt. Further, it is claimed that the defendant's eventual willingness to testify before the grand jury and the attempt to purge himself of civil contempt should be taken into account by this court in assessing the necessity of prior warning.

**LAW**

This issue seems to be one of first impression in the Second Circuit. Petito bases his claim on the Ninth Circuit's decision in *Yates v. United States*, 227 F.2d 848 (9th Cir. 1955) (*Yates I*). In *Yates I* the defendant in a Smith Act prosecution was held in civil contempt for refusal to answer four questions posed on June 26. On June 30, the defendant again refused to answer a series of questions, although she was direct-

---

1. The grand jury investigation resulted in several indictments for RICO, conspiracy, and tax violations.

2. Between the oral decision on this motion and the filing of this opinion, Petito was tried and convicted by a jury on both counts of the indictment.

ed to do so by the trial judge. Yates was then sentenced on four separate contempts. The Court of Appeals reversed these latter four sentences. *Yates v. United States*, 227 F.2d 848 (9th Cir. 1955).[3]

The decision in *Yates I* was based on due process grounds. After examining the different purposes between civil and criminal contempt, the Ninth Circuit went on to hold that "while coercion [a civil contempt sentence] is applied, the defendant in the criminal case is entitled to know he may yet be subjected to a definite penalty for contempt and that the coercive restraint is not intended to relieve him of the punishment for the criminal refusals which he has already uttered." *Yates v. United States*, 227 F.2d 848, 850–51. The court based this holding in part on the "notions inherent" in due process of law. *Yates I* at 851.

Three years later, the Ninth Circuit reaffirmed and expanded the *Yates I* holding in *Daschbach v. United States*, 254 F.2d 687 (9th Cir. 1958). As the court explained, "the circumstances present in that Yates case and in the instant case [*Daschbach*] are of such similarity that the due process consideration referred to in the Yates case is equally present here . . . . the rationale of that opinion, however would apply equally to one who, like appellant Phillips, was a witness but not a defendant." *Daschbach* at 690. The court thus expanded the *Yates I* holding to witnesses who refused to testify. The court then concluded that in the absence of any notice that "the coercive restraint was not intended to relieve [appellants] of a possible penal sentence," the subsequent convictions and sentences for criminal contempt deprived appellants of due process of law. *Daschbach* at 692.

The rule established in *Yates I* and *Daschbach* remains the only precedent directly on point. While the issue of notice under *Yates I* and *Daschbach* has never been squarely faced by the Second Circuit,

two cases provide the court with guidance in this matter. Both cases suggest a result different from that reached in *Yates I* and *Daschbach*.

In *United States v. Berardelli*, 565 F.2d 24 (2d Cir. 1977), the court upheld defendant's conviction for criminal contempt. On appeal, it was contended that the trial court's charge was erroneous insofar as it refused to charge that " 'the jury in a criminal contempt case must find not only that the defendant intended to disobey the court's order but also that he had the specific intent to disobey *the law*' . . . . (emphasis in original)." *United States v. Berardelli*, 565 F.2d at 30. The court summarized defendant's request as "a charge to the effect that ignorance of 'the law' would be a defense." *Berardelli* at 30. The Second Circuit upheld the trial court's refusal to charge the jury to this effect.

An additional Second Circuit case providing this court with guidance is *United States v. Morales*, 566 F.2d 402 (2d Cir. 1977). In *Morales*, the defendant refused to testify before a grand jury. He was cited for civil contempt and jailed. He was released soon thereafter but was indicted for and convicted of criminal contempt.

Morales appealed, questioning the power of the grand jury to indict him for criminal contempt insofar as a judge had not referred the alleged contempt to the grand jury. The Court of Appeals held that "[r]eversal would not . . . be warranted unless Morales could demonstrate that his indictment prejudiced him—for example, by failing to accord him the notice or other rights provided by Rule 42, F.R.Crim.P. . . . ." *United States v. Morales*, 566 F.2d at 405 (footnote and citations omitted). Insofar as Morales did not claim that the indictment deprived him of notice or any other right provided by Fed.R.Crim.P. 42(b)[4], the court upheld the indictment.

---

3. The eleven convictions for criminal contempt were affirmed by the Ninth Circuit *Yates v. United States*, 227 F.2d 844 (9th Cir. 1955), *reversed in part, Yates v. United States*, 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95 (1957). The Smith Act conviction was reversed by the Su-

preme Court. *Yates v. United States*, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957).

4. Fed.R.Crim.P. 42(b) provides in pertinent part:

The court went on to hold that "Rule 42(b) does not purport to exclude the possibility of proceeding against contemnors by indictment." *Morales* at 405 n.2.

The question not reached in *Morales*, concerning the circumstances under which a defendant may be deprived of proper notice, is presented here for decision.

The defendant urges this court to apply the rule established in *Yates I* and *Daschbach*. The court refuses to do so. First, this court finds the *Yates I* and *Daschbach* decisions unconvincing. These cases merely state a conclusion; in essence, these opinions are devoid of any reasoning other than the statement that the lack of notice deprives a contemnor of due process. *Yates I* at 851; *Daschbach* at 692.

■ This court, however, does not regard the issue of prior notice as "inherent in the notions of due process." Rather, the issue is whether notice was given in accordance with Fed.R.Crim.P. 42(b). We must answer this question in the affirmative for three reasons: (1) ignorance of the law is not a valid defense in this case; (2) even assuming that this defense is raised, Petito, having been represented by counsel during the grand jury proceedings, should have known that he could be indicted for criminal contempt[5]; (3) under the foregoing two conditions, the indictment must have given Petito adequate notice under Rule 42(b).

We begin our analysis by applying the Second Circuit's holding in *United States v. Berardelli*, 565 F.2d at 30. Petito would have this court find that ignorance of the law should excuse him. We reject this notion. The legal maxim that ignorance of the law excuses no man has long been a major premise of our criminal law. *United States v. International Minerals and Chemical Corp.*, 402 U.S. 558, 563, 91 S.Ct. 1697, 1700–01, 29 L.Ed.2d 178 (1971); *Lambert v. California*, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957); *Williams v. North Carolina*, 325 U.S. 226, 238, 65 S.Ct. 1092, 1099, 89 L.Ed. 1577 (1945); *Armour Packing Co. v. United States*, 209 U.S. 56, 28 S.Ct. 428, 52 L.Ed. 681 (1908); *United States v. Gregg*, 612 F.2d 43, 51 (2d Cir. 1979); *United States v. Squires*, 440 F.2d 859, 863–4 (2d Cir. 1971); *United States v. Inciso*, 292 F.2d 374, 380 (7th Cir. 1961), *cert. denied*, 368 U.S. 920, 82 S.Ct. 241, 7 L.Ed.2d 135 (1961); cf. *Utermehle v. Norment*, 197 U.S. 40, 25 S.Ct. 291, 49 L.Ed. 655 (1905); cf. *Hunt v. Ronsmaniere's Adm.*, 26 U.S. (1 Pet.) 1, 7 L.Ed. 27 (1828); cf. New York Penal Law § 15.20(2) (McKinney's 1971); cf. Oliver Wendell Holmes, *The Common Law*, ed. M. DeW. Howe, 41 (1963); cf. La Fave and Scott, *Criminal Law* § 47 (1972); cf. E.C. Torcia *Wharton's Criminal Law* § 77 (14th ed. 1978). *See also United States v. Berardelli*, 565 F.2d at 30.

■ This maxim, however, is not an absolute rule. Ignorance of the law does constitute a defense "when it negatives the existence of a mental state essential to the crime charged." La Fave and Scott, *Criminal Law* § 47 (1972). Cf. *United States v. Squires*, 440 F.2d at 863–4. Given the nature of the criminal contempt, Petito's claimed ignorance of the law did not "negative" the existence of the mental state required for his willful refusal to answer questions. Petito willfully refused to answer questions and he continued to do so even when committed to prison for civil contempt. Indeed, 18 U.S.C. § 401[6] does

(b) Disposition upon Notice and Hearing. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest ...."

5. No claim of ineffective assistance of counsel is raised.

6. 18 U.S.C. § 401 provides:

Power of court

A court of the United States shall have power to punish by fine or imprisonment, at its discretion such contempt of its authority, and none other, as—

not provide that a mental state is required for acts of criminal contempt.

Secondly, assuming *arguendo* that ignorance of the law in this case would suffice as a defense, the court does not believe that Petito was ignorant of the law. This court is cognizant of the fact that the defendant was represented by an attorney at all times during the grand jury proceedings. The attorney should have known of the possibility of criminal contempt proceedings being brought against Petito.

In addition to the foregoing considerations, the court finds that the indictment provided sufficient notice to Petito to satisfy the requirements of Fed.R.Crim.P. 42(b). Rule 42(b) requires that criminal contempt be "prosecuted on notice .... The notice shall be given orally by the judge in open court in the presence of the defendant *or, on application of the United States attorney* or of an attorney appointed by the court for that purpose, *by an order of arrest.*" (emphasis added) The court holds that an indictment sought by the United States attorney is the equivalent of "an order of arrest" for the purposes of Rule 42(b). Thus, the indictment provides adequate notice to the defendant. To hold otherwise would seem to overrule the decision in *United States v. Morales*, 566 F.2d at 405 n.2, which held that an indictment is a valid method of instituting contempt proceedings.

Yet, the defendant claims that his eventual willingness to testify before the grand jury should be taken into account by this court in assessing the necessity of prior warning. Petito's claim must be examined in light of the goals served by criminal and civil contempt punishments.

■ It has long been recognized that civil and criminal contempt serve different purposes. *Yates v. United States*, 355 U.S. 66, 74–75, 78 S.Ct. 128, 133–34, 2 L.Ed.2d 95 (1957). Civil contempt is a coercive measure used to force individuals to comply with a court's order. Because of its coercive nature, a civil contempt penalty for refusal to testify before a grand jury cannot extend beyond the term of that grand jury.

■ Criminal contempt is a punitive measure. It is punishable in a separate proceeding. *Yates v. United States*, 227 F.2d 848, 850 (9th Cir. 1955). A sentence imposed upon conviction on criminal contempt is designed to punish the contemnor, not to coerce him. The decision to seek criminal contempt charges is wholly within the discretion of the prosecutor. Since Petito received notice and claims no other deprivation of rights, the court upholds the government's right to institute criminal contempt proceedings against the defendant.

For the foregoing reasons, the court finds that it cannot agree with the reasoning and findings set forth in *Yates I* and *Daschbach*. Accordingly, the defendant's motion to dismiss the contempt charge of the indictment is denied.

So Ordered.

---

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.